**IU INTERNATIONAL CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 94–259 T.**

United States Court of Federal Claims.

Feb. 8, 1996.

Irving Salem, New York City, for plaintiff.

Mildred L. Seidman and Jeffrey H. Skatoff, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

HODGES, Judge.

This tax refund case is before the court on cross-motions for summary judgment.[1] Plaintiff disputes the Internal Revenue Service's interpretation of Treas.Reg. § 1.1502–32 regarding adjustment of a subsidiary's stock basis for a consolidated tax return after a spin-off transaction. We rule for defendant.

## BACKGROUND

IU International is the parent corporation of Unijax. In 1981, Unijax was the parent corporation of four companies: General Waterworks Corp., Conversion Systems, Biggers Brothers, and International Mills Service.[2] Unijax distributed the stock of the four companies to IU on December 11, 1981 as a tax-free spin-off transaction under I.R.C. § 355.

Applicable treasury regulations state in pertinent part:

> As of the end of each consolidated return year, each member owning stock in a subsidiary shall adjust the basis of such stock in the manner prescribed in this section.

---

1. Plaintiff filed its motion for summary judgment, and we granted defendant's request that the court resolve this matter as if cross-motions for summary judgment had been filed. Plaintiff did not object. The parties have stipulated to all relevant facts and we adopt them for the purpose of this opinion. *See* Appendix (Joint Stipulation of Facts Not in Dispute filed April 4, 1995 as corrected by request of the parties by Order dated January 18, 1996). The only issue is interpretation of applicable treasury regulations.

2. Under this arrangement, Unijax is considered a "first-tier subsidiary" of IU and the companies it holds are "second-tier subsidiaries."

768

If a subsidiary owns stock in any other subsidiary, the adjustment with respect to the stock of the higher tier subsidiary shall not be made until after the adjustment is made with respect to the stock of the lower tier subsidiary. In the case of a disposition (as defined in § 1.1502–19(b)) of stock of a subsidiary before the end of the taxable year, the adjustment with respect to such stock shall be made as of the date of disposition.

Treas.Reg. § 1.1502–32(a). IU allocated $79,889,945 of its basis in Unijax to General Waterworks pursuant to I.R.C. § 358 and Treas.Reg. § 1.358–2. Section 358 authorizes IRS to establish procedures for allocating basis of the distributing corporation between the distributing corporation and controlled corporations involved in a spin-off transaction; the allocation of earnings and profits is controlled by I.R.C. § 312 and Treas.Reg. § 1.312–10.

Plaintiff sold 41.8% of its General Waterworks stock to an unrelated corporation nine months after the spin-off, in September 1982. According to plaintiff, General Waterworks' basis should be adjusted upward to reflect earnings and profits allocated to it as a result of IRS regulations governing the spin-off transaction. Those allocated earnings and profits were higher than General Waterworks' actual earnings and profits for the year.

Plaintiff believed that the earnings and profits allocated by regulation represented an increase in earnings and profits for the year, so it made a positive adjustment to the basis of the subsidiary by the amount of the allocated earnings and profits ($27,229,174). This resulted in a relatively lower gain on the sale of stock for tax purposes. Plaintiff decreased its basis in Unijax by the same amount to offset this benefit. Defendant contends that the proper basis for the General Waterworks' stock is the basis allocated to it according to the relative fair market value of the distributing corporation and its subsidiaries at the time of the transaction.

**3.** IU's basis in the distributing corporation at the time of the transaction includes Unijax and the

*DISCUSSION*

**I.**

The Commissioner has promulgated a detailed and comprehensive set of rules for adjusting the basis of a subsidiary's stock held by a parent corporation filing a consolidated return. Each year a positive or negative adjustment is made to the basis of the subsidiary's stock according to the regulations. The adjustment in this transaction is positive—"an allocable part of the undistributed earnings and profits of the subsidiary for the taxable year." Treas.Reg. § 1.1502–32(b)(1)(i).

In the case of a disposition, the basis and earnings and profits of the distributing corporation at the time of the transaction are allocated between it and the controlled corporations.[3] Thus, IU's basis in Unijax and Unijax's earnings and profits were allocated among Unijax and its subsidiaries. First, the bases of the subsidiaries and of the distributing corporation are determined by fair market value. Second, the earnings and profits attributable to the subsidiaries and the distributing corporation are assigned by a formula set forth in the regulations.

*A. Basis*

The first step in determining the basis of a spun-off subsidiary is to adjust the distributing corporation's basis in the subsidiary pursuant to Treas.Reg. § 1.1502–32(b)(1)(i) by adding the undistributed earnings and profits of the subsidiary for the taxable year. Because this is a multiple-tier organization, Treas.Reg. § 1.1502–32(a) directs that "the adjustment with respect to the higher tier subsidiary shall not be made until after the adjustment is made with respect to the stock of the lower tier subsidiary." Thus, the earnings and profits of the second-tier subsidiary increases the value of the first-tier subsidiary in the hands of the parent corporation. After adjusting the first-tier subsidiary's earnings and profits, the parent's basis in the first-tier subsidiary is adjusted.

four subsidiaries.

Unijax adjusted the basis of its stock in the subsidiaries by adding the undistributed earnings and profits and the dividends received from the subsidiaries for the taxable year. General Waterworks' undistributed earnings and profits on the day of the transaction was negative ($-\$3$ million), but was recorded as zero for the purposes of this calculation. Undistributed earnings and profits from the subsidiaries for the year totalled $5,150,859 and Unijax received $11,-780,652 in dividends during the year from its subsidiaries; the total earnings and profits from the subsidiaries to Unijax was roughly $17 million. IU's basis in Unijax therefore was adjusted upward by the amount of the current undistributed earnings and profits—$17 million.

The distributing corporation's basis is allocated between it and the controlled corporations pursuant to I.R.C. § 358(b)(1) and (2). The regulations state that "the basis of all the stock held before the transaction (as adjusted under § 1.358–1) shall be allocated among the stock of all classes ... held immediately after the transaction in proportion to the fair market values of the stock of each class." Treas.Reg. § 1.358–2(a)(2). Thus, the basis for the distributing corporation and the controlled corporations are determined according to fair market value.

Unijax reduced its basis as a result of the transaction by General Waterworks' fair market value and that of the other subsidiaries. General Waterworks' fair market value immediately after the spin-off was approximately $80,000,000; the other subsidiaries were valued at a total of $112,000,000. The amount allocated to General Waterworks' basis was $79,889,945, as properly calculated pursuant to section 358(b)(2) and Treas.Reg. § 1.358–2(a)(2). IU's remaining basis in Unijax was $89,858,588. Unijax's fair market value immediately following the spin-off was $90,000,000.

### B. Allocation of Earnings and Profits

After the determination of basis, earnings and profits are allocated between the distributing corporation and the controlled corporation according to I.R.C. § 312(h) and Treas. Reg. § 1.312–10(b). The regulation states:

[T]he earnings and profits of the distributing corporation shall be decreased by the lesser of the following amounts:

(1) The amount by which the earnings and profits of the distributing corporation would have been decreased if it had transferred the stock of the controlled corporation to a new corporation in a reorganization ... and immediately thereafter distributed the stock of such new corporation or,

(2) The net worth of the controlled corporation. (For this purpose the term "net worth" means the sum of the bases of all the properties plus cash minus all liabilities.)

If the earnings and profits of the controlled corporation immediately before the transaction are less than the amount of the decrease in earnings and profits of the distributing corporation (including a case in which the controlled corporation has a deficit) the earnings and profits of the controlled corporation, after the transaction, shall be equal to the amount of such decrease. If the earnings and profits of the controlled corporation immediately before the transaction are more than the amount of the decrease in the earnings and profits of the distributing corporation, they shall remain unchanged.

The total earnings and profits of the distributing corporation at the time of the transaction are allocated between it and the controlled, spun-off corporation by the lesser of the decrease computed under section 1.312–10(a) and the net worth of all the controlled corporations. The percentage of fair market value that each company (Unijax and the subsidiaries) represents as compared to the total fair market value of the distributing corporation determine the allocation of earnings and profits.

The fair market value of General Waterworks stock was $80 million, or 28% of the total fair market value of the distributing corporation. Thus, the amount of decrease in Unijax's earnings and profits because of earnings and profits attributable to General Waterworks is 28% of $95,978,758 (Unijax's earnings and profits), or $27,229,174. Be-

cause this number is less than General Waterworks' fair market value, it was used as the amount of decrease to Unijax's earnings and profits attributable to General Waterworks. *See* Treas.Reg. § 1.312–10(b).

Under Treas.Reg. § 1.312–10(b), the controlled corporation's earnings and profits equal the amount of the decrease to the distributing corporation's earnings and profits unless its calculated earnings and profits are greater. General Waterworks' calculated earnings and profits were negative at the time of the transfer. Thus, General Waterworks was assigned $27,229,174 in earnings and profits because that is the amount of the decrease in Unijax's earnings and profits.

Plaintiff sees this assignment as an increase in earnings and profits because it is greater than the actual, calculated amount of General Waterworks' earnings and profits for the year, which was (−)$3 million. Defendant argues that it is not an increase in General Waterworks' earnings and profits, but a substitution of earnings and profits for purposes of the adjustment.

## II.

The issue of this case is whether the earnings and profits allocated to a subsidiary following a spin-off transaction result in an increase in earnings and profits for the taxable year that may be added to the stock basis of such subsidiary. Plaintiff contends that General Waterworks' basis would be understated if it were not adjusted for the "increase" in earnings and profits prior to the sale of stock in 1982. To avoid a double benefit, plaintiff reduced Unijax's basis by an amount equal to the increase in General Waterworks' increased earnings and profits. Thus, plaintiff added the earnings and profits allocated to General Waterworks ($27,229,-174) to General Waterworks' assigned basis and subtracted that same amount from Unijax's basis. Plaintiff's basis in General Waterworks stock was therefore increased for the 1982 sale, enabling it to show less profit from the sale. Defendant argues that this is an unallowable second adjustment that plaintiff reads into Treas.Reg. § 1.1502–32(b)(1)(i).

Plaintiff argues that Treas.Reg. § 1.1502–32 ("the Stock Basis Rules") requires it to adjust General Waterworks' basis by the amount of the "increased" earnings and profits. The regulations require that each member of the consolidated group owning stock in a subsidiary adjust its basis in that subsidiary. The only adjustment applicable in this case is a "positive adjustment with respect to a share of stock ... [that shall be equal to] an allocable part of the portion of the undistributed earnings and profits of the subsidiary for the taxable year." Treas.Reg. § 1.1502–32(b)(1)(i). Plaintiff interprets this wording to mean that an adjustment must be made for any addition to a subsidiary's earnings and profits during the year.

Using 26 U.S.C. § 381(c)(2)(B) for support, plaintiff argues that the earnings and profits assigned to General Waterworks in the investment adjustment should be treated as an increase in earnings and profits for the year. This section, which does not apply to section 355 transactions, reads:

[A] deficit in earnings and profits of the distributor, transferor, or acquiring corporation shall be used only to offset earnings and profits accumulated after the date of transfer. For this purpose, *the earnings and profits for the taxable year of the acquiring corporation in which the distribution or transfer occurs shall be deemed to have been accumulated after such distribution or transfer in an amount which bears the same ratio to the undistributed earnings and profits of the acquiring corporation for such taxable year* (computed without regard to any earnings and profits received from the distributor or transferor corporation, as described in subparagraph (A) of this paragraph) as the number of days in the taxable year after the date of distribution or transfer bears to the total number of days in the taxable year.

26 U.S.C. § 381(c)(2)(B) (emphasis added). Plaintiff argues that the lack of the restrictive clause "computed without regard to any earnings and profits received from the distributor or transferor corporation" in the Stock Basis Rules reveals that Congress did not intend to limit the adjustment that plaintiff made here. That is, the allocated earn-

ings and profits should be treated as earnings and profits for the taxable year and used as a positive adjustment to the transferee's basis.

Defendant disputes plaintiff's argument that such language in the regulation permits the adjustment plaintiff seeks. Section 1.1502–32 provides that each member owning stock in a subsidiary must adjust the basis of such stock at the end of each consolidated tax return year. "In the case of a disposition (as defined in § 1.1502–19(b)) of stock of a subsidiary before the end of the taxable year, the adjustment with respect to such stock shall be made as of the date of disposition." Treas.Reg. § 1.1502–32(a).

All relevant adjustments in this transaction were made at the date of disposition. On that date, General Waterworks' earnings and profits were a negative number (−$3 million). The amount of Unijax's earnings and profits allocable to General Waterworks was $27,229,174. Because General Waterworks' earnings and profits were less than the amount attributable to it, the $27,229,174 allocable amount became General Waterworks' new, allocated earnings and profits under section 1.312–10(b). "If the earnings and profits of the controlled corporation immediately before the transaction are less than the amount of the decrease in earnings and profits of the distributing corporation (including a case in which the controlled corporation has a deficit) the earnings and profits of the controlled corporation, after the transaction, shall be *equal to* the amount of such de-

crease." Treas.Reg. § 1.312–10(b) (emphasis added).

This does not suggest that earnings and profits have actually increased or decreased. The regulations allocate earnings and profits of the distributing corporation to the subsidiary being transferred. The allocation is based on a percentage representing the distributed corporation's fair market value as compared to the distributing corporation's total fair market value at the time of the transaction, not a calculation of earnings and profits. This method of assigning earnings and profits supports the notion that the allocation is not an actual "increase" to earnings and profits. Thus, General Waterworks' earnings and profits are not increased, but are replaced by an assigned value.

The regulations are detailed and complex, yet no applicable provision or combination of provisions calls for the adjustment that plaintiff has made.[4] Language of the pertinent regulation shows that the adjustment is merely an allocation of value, not a true increase in earnings and profits. The Code is not creating earnings and profits for the taxable year, it is assigning a value to the subsidiary's share of the distributing corporation's earnings and profits. In reality, there is no increase in earnings and profits.

The Tax Court decisions in *Woods Investment Co. v. Commissioner,* 85 T.C. 274, 1985 WL 15380 (1985), and *CSI Hydrostatic Testers, Inc. v. Commissioner,* 103 T.C. 398, 1994 WL 466342 (1994), *aff'd per curiam,* 62 F.3d

---

4. An analysis of the pertinent legislative history is not necessary, although it would not lead to a different interpretation of the regulations. Plaintiff contends that the language of the Senate Report of the 1954 Tax Code suggests that Congress intended an actual change in earnings and profits for the distributed corporation. One sentence of the legislative history does discuss an "increase" in earnings and profits, but, when read in context, the passage does not support the adjustment plaintiff seeks.

In a distribution or exchange to which section 355 applies, ... the earnings and profits of the distributing corporation shall be decreased by the same amount as they would have been if the distributing corporation had transferred the stock of the controlled corporation to a new corporation in a reorganization ... and immediately thereafter distributed the stock of such new corporation. *In no case shall the*

*earnings and profits of the controlled corporation after the distribution be less than the amount by which the earnings and profits of the distributing corporation are decreased.* Whenever the earnings and profits of the controlled corporation, the stock of which is distributed or exchanged, are less than [the decrease in the earnings and profits of the distributing corporation] the earnings and profits of the controlled corporation shall be so increased as to equal this amount.

S.Rep. No. 1622, 83d Cong., 2d Sess. 250–51 (1954), U.S.Code Cong. & Admin.News 1954 at 4621. (emphasis added). The language of the regulations is substantially similar. It is clear that Congress did not intend for the adjustment to reflect actual earnings and profits or to create an *increase* in earnings and profits for the corporation for the year.

136 (5th Cir.1995), cited by plaintiff are inapposite. Although those cases involved the Stock Basis Adjustment Rules and earnings and profits, they addressed the applicability of other provisions of the Code in calculating earnings and profits. No discussion in those cases support plaintiff's additional adjustment under Treas.Reg. § 1.1502–32.

In *Woods Investment,* the question was whether the Commissioner could require a taxpayer to calculate its earnings and profits in a manner not consistent with the Stock Basis Rules. The taxpayer had followed I.R.C. § 312(k) in accordance with Treas. Reg. § 1.1502–32 and computed earnings and profits according to straight-line depreciation. For the calculation of taxable income of the subsidiary, the taxpayer had used accelerated depreciation. The Commissioner attempted to require a further reduction in basis in the amount of the excess between straight-line and accelerated depreciation to prevent a "double deduction." The Tax Court rejected the Commissioner's proposal. It found that the Commissioner had chosen this method of calculating earnings and profits for the adjustment and was bound to stick with it even though it was at odds with taxable income. The result was mandated by IRS regulations. The Commissioner could have amended them to cure the problem, so the court would not intervene.

In *CSI Hydrostatic Testers,* the question was whether the taxpayer could take a positive adjustment in basis due to an increase in earnings and profits calculated under I.R.C. § 312($l$). That section called for the inclusion in earnings and profits of cancellation of indebtedness income. The Commissioner argued that neither section 312($l$) nor section 1.1502–32 required the inclusion of that income for the purposes of the investment basis adjustment rules. The court found that the adjustment rules allowed a positive adjustment to basis in an amount equal to the undistributed earnings and profits. Since section 312 is the guide for determining earnings and profits, then section 312 applies to the investment basis adjustment rules without specific language in the regulations.

These cases involve the calculation of earnings and profits for the purposes of an adjustment, not the effect of earnings and profits on basis. In a broader sense, these cases stand for the proposition that the Commissioner is held to the effect of conflicting regulations that it could have corrected. This case does not depend on that rationale.

In this case, earnings and profits have been assigned. The proper calculation of earnings and profits is not an issue. The Tax Court cases might have been applicable if the earnings and profits of General Waterworks had been greater than the amount of the decrease in earnings and profits of the distributing corporation. "If the earnings and profits of the controlled corporation immediately before the transaction are more than the amount of the decrease in the earnings and profits of the distributing corporation, they shall remain unchanged." Treas. Reg. § 1.312–10(b)(2). In that circumstance, the applicability of section 312 may have been an issue because the calculation of General Waterworks' actual earnings and profits would have been important.

Section 312 does apply in this case, and there is no dispute that plaintiff followed it correctly. Under section 312(h), General Waterworks' earnings and profits are equal to the amount of the decrease in earnings and profits of the distributing corporation. Thus, we can find no guidance in *CSI Hydrostatic Testers* or *Woods Investment* for the controversy in this case.

## CONCLUSION

There is no support in the regulations for plaintiff's additional adjustment to the basis of its spun-off subsidiary. Plaintiff's motion for summary judgment is DENIED, and defendant's oral cross-motion for summary judgment is GRANTED. The Clerk will enter judgment for defendant. No costs.

## APPENDIX

### JOINT STIPULATION OF FACTS NOT IN DISPUTE

(as corrected by Order dated January 18, 1996)

1. IU International Corporation is incorporated in Delaware, and it (or its predeces-

sor corporation) has filed consolidated federal income tax returns under section 1501 of the Internal Revenue Code of 1954 as the parent corporation of an affiliated group of corporations since 1968 and for all the relevant taxable years in this proceeding.

2. As of October, 1981, IU owned the entire outstanding stock of an intermediate holding company, IU North America, Inc., which in turn owned the entire stock of a number of subsidiaries, including General Waterworks Corp., Unijax, Inc., and three other operating subsidiaries: Conversion Systems, Inc., Biggers Brothers, Inc., and International Mills Service, Inc.

3. The stock of General Waterworks was acquired in 1968 by IU in a tax-free reorganization under section 368(a)(1)(B) of the Code. General Waterworks was formed in 1970 in a transaction under section 351 of the Code in which General Waterworks transferred all of its assets related to the water service business to General Waterworks. General Waterworks was merged into IU North America on November 9, 1973. General Waterworks thereby became a subsidiary of IU North America.

4. IU North America and Unijax merged in 1981 pursuant to the following steps: (i) On October 29, 1981, with a transfer of $1,000, IU incorporated a new wholly owned subsidiary, Jackal, Inc. in Delaware; (ii) On October 31, 1981, IU North America distributed the stock of Unijax, a Florida corporation, to IU; (iii) On November 20, 1981, Unijax was merged into Jackal in a tax-free reorganization under section 368(a)(1)(F) of the Code. Following the merger, Jackal changed its name to Unijax, Inc.; and (iv) On December 7, 1981, IU North America was merged into Unijax in a tax-free reorganization under section 368(a)(1)(A) of the Code.

5. As of January 1, 1981, the amount of accumulated earnings and profits of IU North America and Unijax was $141,481,840 and $657,359, respectively. General Waterworks had a deficit in its earnings and profits of $3,209,706 as of January 1, 1981.

6. As of January 1, 1981, IU's basis in the stock of IU North America was $263,838,106,

IU North America's basis in the stock of Unijax was $71,308,978, and IU North America's basis in the stock of General Waterworks was approximately $16.1 million.

7. Without taking into account any distributions, the amount of the earnings and profits accruing during 1981 (not taking into account any allocation under section 312(i) of the Code) of Unijax, IU North America/Unijax and General Waterworks was $10,061,754 (as of November 20, 1981), $43,313,024 (as of December 11, 1981) and $5,345,284 (as of December 11, 1981), respectively.

8. Distributions by IU North America, the old and new Unijax and General Waterworks during 1981 were as follows:

(i) The amount of the total distributions by IU North America was $88,816,106 ($43,313,024 of which is from current earnings and profits, and $45,503,082 is from accumulated earnings and profits);

(ii) The amount of the total distributions by the old Unijax was $7,073,349 (all of which was from current earnings and profits). There were no distributions by the new Unijax during 1981; and

(iii) The amount of the distributions by General Waterworks during 1981, prior to the spin-off, was $8,988,933. The distribution of $5,345,284 was from its current earnings and profits. The excess ($3,643,649) of such distributions over the earnings and profits accruing during 1981 was treated as return of capital.

9. As a result of the distribution of the old Unijax by IU North America described in paragraph 4(ii), the amount of IU North America's earnings and profits was reduced, and IU's earnings and profits were increased, by the amount of such distribution ($71,308,978). This amount is reflected in the amount of total distributions by IU North America ($88,816,106) during 1981 described in paragraph 8(i).

10. As a result of the merger of Unijax and Jackal, described in paragraph 4(iii), no consolidated return adjustments were made.

11. As a result of the merger of Unijax and IU North America described in paragraph 4(iv), the earnings and profits of IU

*APPENDIX*—Continued

North America ($95,978,758) became Unijax's earnings and profits, and IU's basis in the stock of IU North America ($263,838,106) was carried over to IU's basis in the stock of Unijax.

12. On December 11, 1981, as a part of a restructuring of the IU's consolidated group and for good business purposes, Unijax distributed the stock of General Waterworks to IU. Three other subsidiaries (Conversion, Biggers and IMS) were also distributed by the IU at the same date.

13. The distribution of General Waterworks on December 11, 1981 qualified as a tax-free spin-off under section 355 of the Code.

14. IU's basis in Unijax at the time of the spin off was $281,600,088, which was IU's basis at the beginning of 1981 ($263,838,106), increased by the amount of earnings and profits of the four spun-off subsidiaries during 1981 up to the date of the spin-off ($16,-931,511) and audit adjustments for 1981 ($1,750,878) and decreased by the amount of the tax allocation to General Waterworks for 1981 ($920,407).

15. Immediately after the spin-off, a portion of IU's basis in Unijax was allocated to the basis in the stock of the four spun-off subsidiaries pursuant to section 358 of the Code. The allocation was based on an independent appraisal by Goldman, Sachs & Co. under which Unijax, General Waterworks, Conversion, Biggers and IMS were valued at $90,000,000, $80,000,000, $45,000,000, $30,-000,000 and $37,000,000 respectively. The amount allocated to the basis of such members, properly calculated pursuant to section 358(b)(2) of the Code and Treas.Reg. § 1.358–2(a)(2), was $79,889,945 for General Waterworks, $44,943,374 for Conversion, $29,962,249 for Biggers, and $36,945,932 for IMS. IU's remaining basis in Unijax was $89,858,588.

16. Immediately after the spin-off of General Waterworks, the amount of the earnings and profits of Unijax was properly decreased by $27,229,174, and the amount of the earnings and profits of General Waterworks was properly increased to $27,229,174. This computation took into account the stock values reflected in paragraph 15, General Waterworks' net worth in excess of $27,229,174, and the amount of General Waterworks' earnings and profits (which was a deficit and was eliminated). The increase in the earnings and profits for the other spun-off subsidiaries, computed under Treas.Reg. § 1.312–10(b), was $13,762,249 for Conversion, $10,-014,252 for IMS, and $7,080,305 for Biggers. The decrease in New Unijax's earnings and profits, computed under Treas.Reg. § 1.312–10(b), was $27,229,174 for General Waterworks, $15,318,210 for Conversion, $12,592,-413 for IMS, and $8,097,048 for Biggers.

17. On September 10, 1982, IU sold roughly 41% of the stock of General Waterworks to Lyonnaise American Holding, Inc., an unrelated party, for $32,400,000. The closing took place on October 14, 1982. At the time of the spin-offs, there was no plan or intention to sell Unijax or any of the spun-off subsidiaries.

18. Between the date of the spin-off of General Waterworks and October 14, 1982, the following adjustments were made to the earnings and profits and basis of General Waterworks. During the short period following the spin-off until December 31, 1981, the amount of General Waterworks' earnings and profits was $5,468,302, and the amount of total distributions from General Waterworks was $1,258,358. During the short period from January, 1, 1982 until October 14, 1982, the amount of General Waterworks' earnings and profits was $7,652,214 and the amount of total distributions from General Waterworks was $8,855,054. Accordingly, since the spin-off of General Waterworks until October 14, 1982, the total net positive basis adjustments were $3,007,104.

19. All the stock in IMS and Unijax and 80% of the stock in Conversion are held by IU as of this date.